# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF OHIO
### EASTERN DIVISION

| | | |
|---|---|---|
| FRYBURG EXCAVATING & TRUCKING, LLC, | ) ) | CASE NO.:    5:19-cv-01680 |
| | ) | JUDGE JOHN R. ADAMS |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| HUDCO LEASING, LLC, *et al.*, | ) | **MEMORANDUM OF OPINION AND** |
| | ) | **ORDER** |
| Defendants. | ) | (Resolves Docs. 11 and 13) |

Currently pending before this Court is Defendant Hudco Leasing, LLC's ("Hudco") motion to dismiss Plaintiff Fryburg Excavating & Trucking, LLC's ("Fryburg") complaint for lack of personal jurisdiction and improper venue, pursuant to Federal Rules of Civil Procedure 12(b)(2) and 12(b)(3), respectively. (Mot. to Dismiss 1, ECF No. 11.) Fryburg timely opposed Hudco's motion, to which Hudco timely filed a reply in support of its original motion. (Opp'n to Mot. to Dismiss, ECF No. 12; Reply in Supp. of Mot. to Dismiss, ECF No. 16. *See also* Mot. to Substitute, ECF No. 17 and associated attachments.) Additionally, although Defendant North Georgia Truck and Parts, LLC ("North Georgia") did not engage with Hudco and Fryburg's motion practice, North Georgia did file a motion for leave to file an amended answer on September 11, 2019, which was never opposed. (Mot. to Am. Answer, ECF No. 13.)

For the reasons explained herein, this Court finds that it does have personal jurisdiction over Hudco, and, additionally, that this Court is the proper venue for this action. Therefore, Hudco's pending motion to dismiss this action for lack of jurisdiction and improper venue is DENIED. Because this matter will not be transferred to the United States District Court for the Northern

District of Georgia pursuant to Hudco's request, North Georgia's motion for leave to file an amended answer is hereby GRANTED.

## I. STATEMENT OF FACTS

On June 7, 2019, Fryburg, an Ohio limited liability company in the excavating business, filed a complaint against Hudco and North Georgia (Hudco and North Georgia are collectively referred to as "Defendants" throughout) in the Holmes County Court of Common Pleas. (Compl. 1-2, ECF No. 1-2.) On July 23, 2019, Defendants removed the matter to this Court on the basis of diversity jurisdiction pursuant to 28 U.S.C. § 1332. (*See generally* Notice of Removal, ECF No. 1.)

This action arises out of a sale of heavy equipment. (Compl. ¶ 8, ECF No. 1-2.) Fryburg alleges that in February 2018, it purchased a piece of machinery from Defendants which Defendants represented was in good working order and under warranty. (*Id.* at ¶¶ 8-12.) Fryburg claims, however, that almost immediately after taking possession of the machinery, it failed to function as Defendants represented it would. (*Id.* at ¶¶ 13-16.) Fryburg further asserts that the machinery was not actually under warranty as Defendants had represented prior to the sale. (*Id.* at ¶¶ 17-21.) Due to the machinery failure and lack of warranty, Fryburg contends that it suffered various damages. (*Id.* at ¶¶ 22-26.) For this, Fryburg brings claims of breach of contract, breach of express warranty, breach of implied warranty, fraud, and unjust enrichment, seeking damages jointly and severally against Hudco and North Georgia. (*Id.* at ¶¶ 27-62.)

Fryburg's complaint sets forth that Fryburg is an Ohio limited liability company with its principal place of business in Millersburg, Ohio. (*Id.* at ¶ 1.) The complaint also provides that Hudco and North Georgia are both Georgia limited liability companies with Hudco's principal place of business in Ringgold, Georgia and North Georgia's principal place of business in Chickamauga, Georgia. (*Id.* at ¶¶ 2-3.) Fryburg's complaint generally alleges that both Hudco and

North Georgia have continuous and systematic contacts with Ohio as they transact and solicit business here. (*Id.* at ¶ 4.) Furthermore, Fryburg contends that its claims against Hudco and North Georgia arose out of activity in Ohio, or, at the very least, have a substantial nexus to Ohio. (*Id.* at ¶ 5.) Fryburg specifically alleges that Hudco and North Georgia have connections to Ohio because they contracted to sell, and ultimately sold, goods to Fryburg in Ohio. (*Id.* at ¶ 6-7.)

In response to Fryburg's complaint, Hudco filed the currently pending motion to dismiss asserting that this Court lacks personal jurisdiction over Hudco and that this Court is the improper venue for this matter pursuant to Federal Rules of Civil Procedure 12(b)(2) and 12(b)(3), respectively. (Mot. to Dismiss 1, ECF No. 11.) Hudco asserts that it is a business engaged in "leasing and selling heavy equipment to contractors and property owners primarily located in north Georgia, east Tennessee, and northern Alabama" with the associated statements that "Hudco does not conduct business in Ohio" and although "Hudco does maintain a website listing various pieces of equipment for sale, Hudco does not specifically market to customers in Ohio." (Mem. in Supp. Mot. to Dismiss 1, ECF No. 11-1.) Hudco further contends that it is not an entity registered to conduct business in Ohio and that it does not maintain a place of business, an office, a bank account, or employees in Ohio. (*Id.* at 2, 5.) With respect to business transactions, Hudco claims that it does not target Ohio to make sales, that it does not actually conduct sales in Ohio, that it does not provide goods or services to customers in Ohio, that it does not contract to provide goods or services to customers in Ohio, and that although it maintains a website that is "presumably available to Ohio residents, Hudco does not make, use, [or] offer to sell equipment to contractors or property owners in Ohio." (*Id.* at 2-3, 5.) Finally, Hudco asserts that "[n]o owner, member, or employee of Hudco has ever visited Ohio for the purpose of transacting business." (*Id.* at 3.) In its motion, Hudco focuses this Court's attention to one of two exhibits Fryburg attached to the

complaint – an invoice sent to Fryburg from North Georgia for the machinery at issue in this matter – as indicative that Hudco did not engage in a business transaction with Fryburg. (*See generally id.* and associated attachments.)

In response to Hudco's motion and the allegations contained therein, Fryburg asserts that it found the machinery it ultimately purchased from Hudco on equipmenttrader.com, a national, interactive website on which Hudco is a dealer. (Br. in Opp'n to Mot. to Dismiss 1, ECF No. 17-1.) Fryburg provides that prior to purchasing the machinery, during the purchase of the machinery, and after purchasing the machinery, Hudco and Fryburg maintained communication through phone calls, text messages, and emails. (*Id.* at 3.) Additionally, Fryburg contends that Hudco shipped the machine to Ohio after a purchase agreement was reached, and that North Georgia only became involved in the transaction by sending Fryburg an invoice after delivery of the machinery to Ohio by Hudco. (*Id.* at 1, 3. *See also* Br. in Opp'n to Mot. to Dismiss Ex. C, ECF No. 17-5.) In fact, the sale listing for the machinery provides only Hudco's contact information; there is no reference to North Georgia on the sale listing. (Br. in Opp'n to Mot. to Dismiss Ex. A, ECF No. 17-3. *See also* Compl. Ex. A, ECF No. 1-2.)

Hudco's reply in support of its motion to dismiss maintains its contention that jurisdiction in this Court is unfounded, despite Fryburg's arguments, because Fryburg conducted a nationwide search, rather than a local search, for the machinery on equipmenttrader.com. (Reply in Supp. of Mot. to Dismiss 1, ECF No. 16.) Finally, Hudco, once again, hangs its hat, and jurisdictional arguments, on the invoice from North Georgia to Fryburg as demonstrative that Fryburg purchased the machinery from North Georgia rather than Hudco, effectively removing Hudco from any legal responsibility in this matter, and making this Court incapable of exercising jurisdiction over Hudco. (*Id.* at 2.)

## II.   PERSONAL JURISDICTION

### A.  Standard of Review

Regarding the pending motion to dismiss for lack of personal jurisdiction, "[t]he procedural scheme which guides the district court in disposing of Rule 12(b)(2) motions is well-settled." *Theunissen v. Matthews*, 935 F.2d 1454, 1458 (6th Cir. 1991) (citing *Serras v. First Tenn. Bank Nat'l Ass'n*, 875 F.2d 1212, 1214 (6th Cir. 1989)). As plaintiff, it is Fryburg's burden to establish that this Court has personal jurisdiction over Hudco. *Theunissen*, 935 F.2d at 1458 (citing *McNutt v. Gen. Motors Acceptance Corp.*, 298 U.S. 178, 189 (1936)). Where, as with the instant matter, a court rules on a motion to dismiss for lack of personal jurisdiction by analyzing only the pleadings and motions before it, without the parties engaging in discovery or the court conducting an evidentiary hearing, "the court must consider the pleadings and affidavits in a light most favorable to the plaintiff . . . ." *CompuServe, Inc. v. Patterson*, 89 F.3d 1257, 1262 (6th Cir. 1996) (citing *Theunissen*, 935 F.2d at 1458-59). In such consideration, Fryburg's burden is "relatively slight," however, requiring that Fryburg "make only a prima facie showing that personal jurisdiction exists in order to defeat dismissal." *Speedeon Data, LLC v. Integrated Direct Mktg., LLC*, 718 F. App'x 333, 336 (6th Cir. 2017) (quoting *Air Prods. & Controls, Inc. v. Safetech Int'l, Inc.*, 503 F.3d 544, 549 (6th Cir. 2007) (internal quotation marks omitted)).

A prima facie showing that personal jurisdiction exists is made by "establishing with reasonable particularity sufficient contacts between [Defendants] and the forum state to support jurisdiction." *Neogen Corp. v. Neo Gen Screening, Inc.*, 282 F.3d 883, 887 (6th Cir. 2002) (quoting *Provident Nat'l Bank v. Cal. Fed. Savings Loan Ass'n*, 819 F.2d 434, 437 (3d Cir. 1987) (internal quotation marks omitted)). When determining whether a prima facie showing of jurisdiction has been made, a court "does not weigh the controverting assertions of the party seeking dismissal,"

which "prevent[s] non-resident defendants from regularly avoiding personal jurisdiction simply by filing an affidavit denying all jurisdictional facts." *Theunissen*, 935 F.2d at 1459.

## B.  Discussion

In cases where subject matter jurisdiction is predicated on diversity, such as the instant matter, when determining whether personal jurisdiction exists over an out-of-state defendant, the law of the forum state is looked to. *Calphalon Corp. v. Rowlette*, 228 F.3d 718, 721 (6th Cir. 2000). Accordingly, a court may only validly exercise personal jurisdiction over an out-of-state defendant when both the forum state's long-arm statute and constitutional due process requirements are met. *Id.*

Looking first to Ohio's long-arm statute, it states:

(A) A court may exercise personal jurisdiction over a person who acts directly or by an agent, as to a cause of action arising from the person's:

(1) Transacting any business in this state;

(2) Contracting to supply services or goods in this state;

(3) Causing tortious injury by an act or omission in this state;

(4) Causing tortious injury in this state by an act or omission outside this state if he regularly does or solicits business, or engages in any other persistent course of conduct, or derives substantial revenue from goods used or consumed or services rendered in this state;

(5) Causing injury in this state to any person by breach of warranty expressly or impliedly made in the sale of goods outside this state when he might reasonably have expected such person to use, consume, or be affected by the goods in this state, provided that he also regularly does or solicits business, or engages in any other persistent course of conduct, or derives substantial revenue from goods used or consumed or services rendered in this state;

(6) Causing tortious injury in this state to any person by an act outside this state committed with the purpose of injuring persons, when he might reasonably have expected that some person would be injured thereby in this state;

> (7) Causing tortious injury to any person by a criminal act, any element of which takes place in this state, which he commits or in the commission of which he is guilty of complicity;
>
> (8) Having an interest in, using, or possessing real property in this state;
>
> (9) Contracting to insure any person, property, or risk located within this state at the time of contracting.

R.C. 2307.382(A)(1)-(9).

In analyzing the first subsection of Ohio's long-arm statute, the Supreme Court of Ohio concluded "the broad wording of the statute permits jurisdiction over non-resident defendants who are transacting any business in Ohio." *Kroger Co. v. Malease Foods Corp.*, 437 F.3d 506, 511 (6th Cir. 2006) (discussing *Kentucky Oaks Mall v. Mitchell's Formal Wear*, 53 Ohio St.3d 73, 559 N.E.2d 477 (1990)). In turn, the Supreme Court of Ohio explained that to transact business in Ohio

> means to prosecute negotiations; to carry on business; to have dealings . . . . The word embraces in its meaning the carrying on or prosecution of business negotiations but it is a broader term than the word "contract" and may involve business negotiations which have been either wholly or partly brought to a conclusion . . . .

*Kentucky Oaks Mall*, 53 Ohio St.3d at 75, 559 N.E.2d 477. This broad interpretation of the "transacting any business" subsection of Ohio's long-arm statute led the Sixth Circuit Court of Appeals to conclude that "the Ohio 'transacting any business' standard is coextensive with the purposeful availment prong of constitutional analysis." *Burnshire Dev., LLC v. Cliffs Reduced Iron Corp.*, 198 F. App'x 425, 432 (6th Cir. 2006).

Turning then to the constitutional analysis, the first point to recognize is that constitutional due process focuses on whether a defendant has sufficient "minimum contacts with [the forum state] such that the maintenance of the suit does not offend 'traditional notions of fair play and substantial justice.'" *Calphalon*, 228 F.3d at 721 (quoting *Int'l Shoe Co. v. Wash.*, 326 U.S. 310, 316 (1945); *Milliken v. Meyer*, 311 U.S. 457, 463 (1940)). The critical question, of course, is whether "the

defendant's conduct and connection with the forum State are such that he should reasonably anticipate being haled into court there." *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 297 (1980).

Pursuant to due process considerations, personal jurisdiction over Hudco may be based upon general jurisdiction or specific jurisdiction, "depending upon the nature of the contacts that the defendant has with the forum state." *Bird v. Parsons*, 289 F.3d 865, 873 (6th Cir. 2002) (citing *Conti v. Pneumatic Prods. Corp.*, 977 F.2d 978, 981 (6th Cir. 1992)). General jurisdiction exists where "a defendant's contacts with the forum state are of such a 'continuous and systematic' nature that the state may exercise personal jurisdiction over the defendant even if the action is unrelated to the defendant's contacts with the state." *Third Nat'l Bank v. Wedge Group, Inc.*, 882 F.2d 1087, 1089 (6th Cir. 1989) (citing generally *Perkins v. Benguet Consol. Mining Co.*, 342 U.S. 437 (1952)). Boiled down, general jurisdiction exists where a defendant is essentially at home. *See Goodyear Dunlop Tires Operations, S.A. v. Brown*, 564 U.S. 915, 919 (2011).

Although Fryburg alleges that Hudco maintains continuous and systematic contacts with Ohio through business transactions and the solicitation of business in Ohio, Fryburg fails to support this general contention, even when this Court considers all provided information in the light most favorable to Fryburg. There is no indication in the pleadings, affidavits, and supporting documentation that Hudco maintains continuous and systematic contacts with Ohio such that it essentially at home in Ohio. Furthermore, the Sixth Circuit Court of Appeals has confirmed that "Ohio law does not appear to recognize general jurisdiction over non-resident defendants, but instead requires that the court find specific jurisdiction under one of the bases of jurisdiction listed in Ohio's long-arm statute." *Conn v. Zakharov*, 667 F.3d 705, 717 (6th Cir. 2012). Therefore, if

constitutional due process requirements are met in this matter, it must be pursuant to the limitations of specific jurisdiction.

Specific jurisdiction allows a state to exercise "personal jurisdiction over a defendant in a suit arising out of or related to the defendant's contacts with the forum." *Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408, 414 n.8 (1984). The standard used to determine whether a defendant should reasonably anticipate out-of-state litigation is the following:

> The unilateral activity of those who claim some relationship with a nonresident defendant cannot satisfy the requirement of contact with the forum State. The application of that rule will vary with the quality and nature of the defendant's activity, but it is essential in each case that there be some act by which the defendant purposefully avails itself of the privilege of conducting activities within the forum State, thus invoking the benefits and protections of its laws.

*Hanson v. Denckla*, 357 U.S. 235, 253 (1958) (citing *Int'l Shoe Co. v. Wash.*, 326 U.S. 310, 319 (1945)). Accordingly, the Sixth Circuit Court of Appeals has set forth a three-part test to determine the outer limits of personal jurisdiction based upon Hudco's contacts with Ohio:

> First, the defendant must purposefully avail himself of the privilege of acting in the forum state or causing a consequence in the forum state. Second, the cause of action must arise from the defendant's activities there. Finally, the acts of the defendant or consequences caused by the defendant must have a substantial enough connection with the forum state to make the exercise of jurisdiction over the defendant reasonable.

*S. Mach. Co. v. Mohasco Indus.,* 401 F.2d 374, 381 (6th Cir. 1968).

With respect to the first prong of the *Southern Machine* test, the purposeful availment requirement "ensures that a defendant will not be haled into a jurisdiction solely as a result of 'random,' 'fortuitous,' or 'attenuated' contacts . . . or of the 'unilateral activity of another party or a third person' . . . . Jurisdiction is proper, however, where the contacts proximately result from actions by the defendant *himself* that create a 'substantial connection' with the forum State." *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 475 (1985) (quoting, in turn, *Keeton v. Hustler*

*Magazine, Inc.*, 465 U.S. 770, 774 (1984); *World-Wide Volkswagen*, 444 U.S. at 299; *Helicopteros Nacionales de Colombia, S.A.*, 466 U.S. at 417; *McGee v. Int'l Life Ins. Co.*, 355 U.S. 220, 223 (1957)).

Physical presence in the forum state, however, is not required to find purposeful availment. *CompuServe*, 89 F.3d at 1264. What is required is actions by a defendant that are purposefully directed towards individuals in the forum state. *Id.* at 1264 (citing *Burger King Corp.*, 471 U.S. at 476). Going further, it is not the mere existence of contacts between a defendant and the forum state that is important, but rather the quality of those contacts. *Burnshire*, 198 F. App'x at 431 (citing *Calphalon*, 228 F.3d at 722). With respect to business transactions specifically, the Supreme Court of the United States has "emphasized the need for a highly realistic approach that recognizes that a contract is ordinarily but an intermediate step serving to tie up prior business negotiations with future consequences which themselves are the real object of the business transaction. . . . It is these factors – prior negotiations and contemplated future consequences, along with the terms of the contract and the parties' actual course of dealing – that must be evaluated in determining whether the defendant purposefully established minimum contacts with the forum." *Burger King Corp.*, 471 U.S. at 479 (quoting *Hoopeston Canning Co. v. Cullen*, 318 U.S. 313, 316-317 (1943) (internal quotation marks omitted)). *See also Cole v. Mileti*, 133 F.3d 433, 436 (6th Cir. 1998) ("If . . . a nonresident defendant transacts business by negotiating and executing a contract via telephone calls and letters to an Ohio resident, then the defendant has purposefully availed himself of the forum by creating a continuing obligation in Ohio.")

Of course, this Court recognizes that "the Ohio Supreme Court has ruled that the Ohio long-arm statute does not extend to the constitutional limits of the Due Process Clause . . . ." *Calphalon*, 228 F.3d at 721. *See also Goldstein v. Christiansen*, 70 Ohio St.3d 232, 238, 638 N.E.2d 541

(1994), fn. 1. However, the Sixth Circuit Court of Appeals has explained that despite differences between Ohio's long-arm statute and the Due Process Clause requirements for jurisdiction,  Ohio's '"transacting any business" standard is coextensive with the Due Process Clause in that it requires both that the defendant have purposefully availed itself of the privilege of acting in Ohio or have caused a consequence in Ohio and that the act or consequence in Ohio be sufficiently substantial to support jurisdiction." *Burnshire*, 198 F. App'x 425 at 430. In truth, for both Ohio's long-arm statute and constitutional due process purposeful availment requirements, instances such as the mere existence of a contract, the mere solicitation of business in the forum state, and activity having a mere impact on commerce in Ohio are all insufficient to establish personal jurisdiction. *Burnshire*, 198 F. App'x 425 at 431 (citing *Calphalon*, 228 F.3d at 722; *U.S. Spring Commc'n Co. v. Mr. K's Foods, Inc.* 68 Ohio St.3d 181, 185, 624 N.E.2d 1048 (1994); *Ucker v. Taylor*, 72 Ohio App.3d 777, 780, 596 N.E.2d 507 (10th Dist.1991)).

Therefore, by way of summary, this Court must evaluate whether Hudco has sufficient minimum contacts with Ohio such that it should reasonably have anticipated being haled to court here. This determination is made by assessing whether the instant matter arises out of or is related to Hudco's own purposeful activity which either occurred in Ohio or was directed to Ohio. Of course, Hudco's purposeful activity must have created a substantial, quality connection with Ohio – one which provided Hudco with the privilege of conducting activities within Ohio rather than one which was the result of random, unilateral, or fortuitous contacts with Ohio.

Given this framework, this Court concludes that Hudco's contacts with Ohio meet both Ohio's long-arm statute under the "transacting any business" clause as well as purposeful availment requirements of constitutional due process. In considering all material in the light most favorable to Fryburg, Hudco itself purposefully availed itself of the privilege of conducting business in Ohio.

Specifically, Hudco communicated with Fryburg before, during, and after the sale of the machinery at issue through telephone calls, email, and text messages with Hudco knowing that Fryburg is located in Ohio. Additionally, Hudco itself shipped the machinery to Ohio once a sale agreement was reached. This type of business relationship is not unilateral, random, or fortuitous by any stretch. And this Court will not opine on whether a contract, by legal terms, was formed between the parties, because it is unnecessary to do so. The back and forth business negotiations regarding the machinery between Hudco and Fryburg, with the contemplation of future consequences, are the true relevant content and Hudco created a continuing obligation to Ohio when it shipped the allegedly faulty machinery to Ohio.

Although Hudco provides generalized contentions that it does not conduct business in Ohio, market to Ohio customers specifically, and never visited Ohio to transact business, Hudco misses the mark. This Court will not address whether Hudco's online presence on equipmenttrader.com or other websites subject Hudco to this Court's jurisdictional reach. It is the souring of a business relationship, struck between Fryburg and Hudco, in which Hudco actively participated and physically shipped the allegedly faulty piece of machinery to Ohio that allows this Court to reach to Georgia and hale Hudco to this Court. Finally, although Hudco repeatedly, specifically points this Court's attention to an invoice sent from North Georgia to Fryburg as indicative that Hudco did not sell the machinery to Fryburg, this Court remains unconvinced that Hudco was uninvolved in business activity with Fryburg in Ohio simply because a third party, who appears to not have been involved in business negotiations regarding the machinery, sent an invoice.

Therefore, this Court finds that Hudco is subject to jurisdiction in this Court pursuant to R.C. 2307.382(A)(1) because it transacted business in Ohio, and, furthermore, in conducting business with Fryburg, Hudco purposefully availed itself of the privilege of acting in Ohio, caused a

consequence in Ohio directed related to its own purposeful activities directed to Ohio, and created a continuing obligation to Ohio, meeting the requirements of purposeful availment under the constitutional due process requirements. Because this Court finds that Hudco is subject to personal jurisdiction in this Court pursuant to R.C. 2307.382(A)(1) of Ohio's long-arm statute, no further analysis of additional sections of the long-arm statute will be analyzed. Additionally, because this Court finds that Hudco's business dealings with Fryburg create substantial enough connection with Ohio for purposeful availment analysis, this Court will not address the parties' competing arguments regarding Hudco's online presence and whether or not that creates substantial contacts with Ohio such that personal jurisdiction is proper.

Although this Court has concluded that it can exercise personal jurisdiction over Hudco pursuant to Ohio's long-arm statute and the purposeful availment prong of constitutional due process analysis, two other constitutional due process factors must be analyzed pursuant to the Sixth Circuit Court of Appeals *Southern Machine* test. As such, the second constitutional due process requirement is that "the cause of action must arise from the defendant's activities" in the forum state. *S. Mach. Co.*, 401 F.2d at 381. "To meet this requirement, a plaintiff must establish at least a 'causal connection' between a defendant's activities in the forum state and the harm to the plaintiff." *Neogen*, 282 F.3d at 892. "If a defendant's contacts with the forum state are related to the operative facts of a controversy, then an action will be deemed to have arisen from those contacts." *CompuServe*, 89 F.3d at 1267. As discussed above, Hudco's contacts with Ohio that establish purposeful availment are directly related to the operative facts of the instant matter. Hudco shipped the machinery to Ohio which allegedly began malfunctioning immediately upon its arrival to Ohio and the material representations Hudco made to Fryburg regarding the machine's warranty were, according to Fryburg, untrue. Despite communication between Hudco and Fryburg

after the arrival of the machinery to Ohio, Fryburg was unable to obtain the manufacturer's warranty Fryburg believed protected the machinery it purchased. Because this matter arises directly from Hudco's contacts with Ohio, the second prong of the *Southern Machine* test is met.

Finally, the third prong of the constitutional due process analysis requires that "the acts of the defendant or consequences caused by the defendant must have a substantial enough connection with the forum state to make the exercise of jurisdiction over the defendant reasonable." *S. Mach. Co.*, 401 F.2d at 381. With respect to this prong, when a court finds that the first two prongs of the constitutional due process analysis are met, "an inference arises that this third factor is also present." *CompuServe*, 89 F.3d at 1268 (citing *Am. Greetings Corp. v. Cohn*, 839 F.2d 1164, 1170 (6th Cir. 1988)). When engaging in analysis for this final factor, this Court must consider "the burden on the defendant, the interest of the forum state, the plaintiff's interest in obtaining relief, and the interest of other states in securing the most efficient resolution of controversies." *CompuServe*, 89 F.3d at 1268 (citing *Am. Greetings Corp. v. Cohn*, 839 F.2d 1164, 1169-70 (6th Cir. 1988)). Of course, this Court recognizes that Hudco is a Georgia business, and defending this action in Ohio will create some burden upon Hudco. However, Hudco entered into business dealings with Fryburg knowing that Fryburg was located in Ohio – Hudco knew that it "was making a connection with Ohio, and presumably [it] hoped that connection would work to [its] benefit." *CompuServe* 89 F.3d at 1268. The fact that the machinery is located in Ohio, repair work and other activities that go to damages appear to have occurred in Ohio, and Fryburg, the damaged party, is located in Ohio all support the conclusion that the consequences of Hudco's actions occurred in Ohio making the exercise of jurisdiction over Hudco in this Court reasonable.

Finally, this Court would like to momentarily address Hudco's strenuous argument that it is not subject to this Court's jurisdiction because Fryburg initiated the business between the parties.

Regardless of how the business relationship was initiated, Hudco certainly would not have shipped machinery to Ohio without intentionally choosing to engage in business dealings with Fryburg. And, of course, Hudco was aware that Fryburg is an Ohio business, as it shipped the machinery directly to Fryburg. Furthermore, the totality of Hudco's contacts with Ohio, even just looking at Hudco's contacts with Ohio through the narrow lens of this case, demonstrate that it chose to conduct business in Ohio and the results of that choice led Hudco to this Court. To have Hudco attempt to avoid jurisdiction in this Court by insisting that this was all Fryburg's doing by conducting a national search for machinery is, in this Court's opinion, not a dispositive argument.

For all the foregoing reasons – because Ohio's long-arm statute and constitutional due process requirements are met – this Court can properly exercise personal jurisdiction over Hudco. Therefore, Hudco's motion to dismiss Fryburg's complaint for lack of personal jurisdiction, pursuant to Fed. R. Civ. P. 12(b)(2) is DENIED.

## III. VENUE

### A. Discussion

In addition to its motions to dismiss this action due to lack of personal jurisdiction, Hudco also argues that dismissal is proper because this Court is an improper venue, pursuant to Federal Rule of Civil Procedure 12(b)(3). (Mot. to Dismiss 1, ECF No. 11-1.) Once again, it is Fryburg's burden to establish that the chosen venue for the action is proper. *Jae v. Chexsystems Inc.*, No. 4:18-cv-0206, 2018 U.S. Dist. LEXIS 114425, at *5 (N.D. Ohio July 10, 2018) (citing *Centerville ALF, Inc. v. Balanced Care Corp.*, 197 F. Supp. 2d 1039, 1046 (S.D. Ohio 2002)).

Pursuant to 28 U.S.C. § 1391(b), "[a] civil action may be brought in – (1) a judicial district in which any defendant resides, if all defendants are residents of the State in which the district is located; (2) a judicial district in which a substantial part of the events or omissions giving rise to

the claim occurred, or a substantial part of property that is the subject of the action is situated; or (3) if there is no district in which an action may otherwise be brought as provided in this section, any judicial district in which any defendant is subject to the court's personal jurisdiction with respect to such action." 28 U.S.C. § 1391(b). If this Court determines that venue here is improper, it "shall dismiss, or if it be in the interest of justice, transfer [the] case to any district or division in which it could have been brought." 28 U.S.C. § 1406(a). The choice to dismiss or transfer this case is within the sound discretion of this Court. *First of Mich. Corp. v. Bramlet*, 141 F.3d 260, 262 (6th Cir. 1998).

Fryburg's complaint provides that "[t]he claims which are the subject of this Complaint arose out of activity in or had a substantial nexus with Ohio." (Compl. ¶ 5, ECF No. 1-2.) This Court recognizes, of course, that neither defendant resides in Ohio. However, this Court finds that venue is proper under 28 U.S.C. §§ 1391(b)(2)-(3). As has been thoroughly analyzed, a substantial part of the events or omissions giving rise to Fryburg's claim occurred in this district – business negotiations occurred in this district, even if Hudco was not physically present, the machinery at issue was shipped to this district, the machinery at issue began malfunctioning in this district, and Fryburg attempted repairs, experienced downtime, and suffered other damages relating to the machinery in this district. Finally, even if all these events giving rise to Fryburg's claims had not occurred in this district, Hudco is subject to this Court's personal jurisdiction, as analyzed in detail above.

In sum, although this Court understands that this district might not be the *most* convenient forum for Hudco specifically, that does not mean that this Court is not the proper venue. Hudco conducted business in this district, the results of which are at issue before this Court, therefore, requiring Hudco to defend itself in this district does not rise to the level of oppression Hudco

argues. Particularly when venue is proper in this district pursuant to statutory limits. Because this Court finds venue is proper, arguments surrounding transfer and whether the court Hudco wishes this matter to be before is proper will not be addressed. For the foregoing reasons, Hudco's motion to dismiss Fryburg's complaint for improper venue pursuant to Fed. R. Civ. P. 12(b)(3) and associated request to transfer this matter are DENIED.

## IV.   CONCLUSION

For the foregoing reasons, the pending motion to dismiss Fryburg's complaint for lack of personal jurisdiction and improper venue are DENIED. Because this matter will not be transferred, North Georgia's motion to amend its answer is hereby GRANTED.

IT IS SO ORDERED.

DATE: April 21, 2020                                 /s/ John R. Adams
                                                              Judge John R. Adams
                                                              UNITED STATES DISTRICT COURT